Case 4:24-cv-00040 Document 20 Filed on 03/29/24 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEALTH ASSISTANTS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-040 |
| | § | |
| THREAD BANK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Wealth Assistants LLC ("Plaintiff") brought this action against Thread Bank ("Defendant"), alleging that Defendant wrongfully froze its bank accounts.[1] Pending before the court is the Amended Opposed Motion to Intervene by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil ("Motion to Intervene") (Docket Entry No. 12). Bustamante, Paul, Whitten, Moore, and Tawil ("Intervenors") allege that Plaintiff defrauded them and that they are the rightful owners of funds in the frozen accounts.[2] For the reasons stated below, the Motion to Intervene will be granted.

---

[1]Plaintiff Wealth Assistants LLC's Amended Petition ("Plaintiff's Complaint"), Docket Entry No. 13, p. 3 ¶ 7. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Motion to Intervene, Docket Entry No. 12, p. 3; Proposed Complaint in Intervention by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil ("Intervenors' Proposed Complaint"), attached to Motion to Intervene, Docket Entry No. 12-2, p. 1 ¶ 1.

## I. Background

Plaintiff filed this action against Defendant on January 5, 2024.[3] Plaintiff alleges that five of its accounts with Defendant — ending in *1232, *1233, *1234, *1235, and *1236 — are wrongfully frozen.[4] Plaintiff alleges claims under the Texas Deceptive Trade Practices Act and claims for Money Had and Received and Unjust Enrichment.[5]

Intervenors filed the Motion to Intervene on February 9, 2024, Plaintiff responded, and Intervenors replied.[6] Intervenors argue that they are entitled to intervention of right and, in the alternative, that the court should allow permissive intervention.[7] Intervenors argue that Plaintiff defrauded them and present evidence that the proceeds are in the frozen accounts.[8] In particular, Intervenors argue that Plaintiff defrauded them by selling them a business opportunity and failing to provide the

---

[3]Plaintiff Wealth Assistant LLC's Original Petition, Docket Entry No. 1. The live pleading is Plaintiff's Complaint filed on February 21, 2024, Docket Entry No. 13.

[4]Plaintiff's Complaint, Docket Entry No. 13, p. 3 ¶ 7.

[5]Id. at 4-6.

[6]Motion to Intervene, Docket Entry No. 12; Plaintiff Wealth Assistants LLC's Response to Motion to Intervene ("Plaintiff's Response"), Docket Entry No. 14; Reply Supporting Amended Motion to Intervene by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil ("Intervenors' Reply"), Docket Entry No. 15. Defendant has made no filings regarding the Motion to Intervene.

[7]Motion to Intervene, Docket Entry No. 12, pp. 5, 8.

[8]Id. at 3-4.

services as promised.[9] Plaintiff responds that arbitration clauses in the Intervenors' contracts should prevent them from intervening, that Intervenors are not entitled to intervention of right, and that the court should not allow permissive intervention.[10]

Intervenors attach their Proposed Complaint, which would allege a common-law fraud claim against Plaintiff.[11]

## II. Legal Standard

### A. Intervention of Right

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

"The burden of establishing inadequate representation [by the existing parties] is on the applicant for intervention." Edwards v. City of Houston, 78 F.3d 983, 1005 (5th Cir. 1996). "'This requirement . . . is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.'" Id.

---

[9]Id. at 3.

[10]Plaintiff's Response, Docket Entry No. 14, pp. 3-4, 8.

[11]Intervenors' Proposed Complaint, attached to Motion to Intervene, Docket Entry No. 12-2, p. 10 ¶¶ 51-54.

(quoting <u>Trbovich v. United Mine Workers of America</u>, 92 S. Ct. 630, 636 n.10 (1972)).

B.   **Permissive Intervention**

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

## III.   Analysis

Intervenors argue that they are entitled to intervention of right and, in the alternative, that the court should allow permissive intervention.[12]  Plaintiff argues that the Intervenors' claims are subject to arbitration clauses, that intervention of right does not apply, and that permissive intervention should be denied.[13]

A.   **Arbitration**

Plaintiff argues that Intervenors' claims are subject to arbitration clauses.[14]  Plaintiff cites no authority holding that a court should consider arbitration clauses in deciding whether to

---

[12]Motion to Intervene, Docket Entry No. 12, pp. 5, 8.

[13]Plaintiff's Response, Docket Entry No. 14, pp. 3-4, 8.

[14]<u>Id.</u> at 3-4.

-4-

permit intervention. It is doubtful that the court could compel arbitration of a claim that is not before the court. Moreover, the Intervenors state that they intend to challenge the arbitration clauses.[15]

## B. Intervention of Right

The Intervenors argue that they qualify for intervention of right because they are the rightful owners of some of the frozen funds, because disposing of Plaintiff's claims in its favor could impair Intervenors' ability to trace and recover the funds, and because Defendant does not adequately represent their interest in the funds.[16] Plaintiff responds that Intervenors have not shown more than a mere economic interest in the outcome of Plaintiff's claims, that Intervenors can protect their claimed interest in a separate lawsuit, and that Intervenors have not shown that Defendant cannot adequately represent their claimed interest.[17]

### 1. Intervenors' Interest in the Frozen Funds

Intervenors argue "[t]he funds . . . still lawfully belong to the Intervenors, so they have an important interest in the funds."[18] Plaintiff responds that "Intervenors have, at best, asserted a

---

[15] Intervenors' Reply, Docket Entry No. 15, pp. 3-5.

[16] Motion to Intervene, Docket Entry No. 12, pp. 5-8.

[17] Plaintiff's Response, Docket Entry No. 14, p. 5 ¶ 13, p. 7 ¶ 18.

[18] Motion to Intervene, Docket Entry No. 12, p. 6.

potential general economic interest in [Plaintiff's] general funds and assets[.]"[19]

Intervention of right requires "something more than an economic interest" in the outcome of the existing case. New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984) (en banc). For example, it is not enough that the case will affect whether a party has sufficient assets to satisfy a separate judgment held by the intervenor. See 22 Acquisition Corp. v. Technical Risks, Inc., Civil Action No. H-03-5425, 2005 WL 8164106, at *3 (S.D. Tex. Feb. 4, 2005), report and recommendation adopted sub nom. 2005 WL 8164107 (S.D. Tex. Mar. 7, 2005).

Intervenors attach Bustamante's, Paul's, and Moore's escrow agreements with two law firms that facilitated their payments to Plaintiff, a series of emails with the law firms confirming that they transferred payments into Plaintiff's bank accounts ending in *1234 and *1235, and a wire transfer authorization by Whitten to Plaintiff's bank account ending in *1236.[20] Intervenors do not present evidence regarding Tawil's payments. Plaintiff offers no

---

[19]Plaintiff's Response, Docket Entry No. 14, p. 5 ¶ 13.

[20]Escrow Agreement, Exhibit 1 to Motion to Intervene, Docket Entry No. 12-1, pp. 4-6; Escrow Relationship Notice, Exhibit 2 to Motion to Intervene, Docket Entry No. 12-1, pp. 18-19; Escrow Agreement, Exhibit 6 to Motion to Intervene, Docket Entry No. 12-1, pp. 37-39; Email Correspondence Re: Bank info, Exhibit 3 to Motion to Intervene, Docket Entry No. 12-1, pp. 23-26; Domestic Wire Transfer Request/Authorization, Exhibit 4 to Motion to Intervene, Docket Entry No. 12-1, p. 28.

evidence to contradict Intervenors' tracing. Unlike the prospective intervenor in 22 Acquisition Corp., Bustamante, Paul, Whitten, and Moore have traced and claim rightful ownership of particular funds at issue in Plaintiff's claims. The court is persuaded that Bustamante, Paul, Whitten, and Moore have shown that they have an "interest relating to the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a).

2.  The Effect of Resolving the Case on Intervenors' Interest

Intervenors argue that "if [Defendant] sends money to [Plaintiff] — either voluntarily or pursuant to an order of the court — Intervenors likely will not be able to recover those funds."[21] Intervenors argue that Plaintiff is likely to disperse the assets, citing Plaintiff's routing of Intervenors' payments through law firm payment processors.[22] Intervenors also cite a past bankruptcy case involving a business operated by some of Plaintiff's ultimate owners — Max Day and Michael Day.[23] Michael Day, Max K. Day, and Max O. Day owned and operated the bankrupt business.[24] The business's customers filed "over 300 proofs of

---

[21]Motion to Intervene, Docket Entry No. 12, p. 6.

[22]Id. at 4, 7. The court understands Intervenors to mean that by using the law firms as intermediaries, Plaintiff sought to avoid providing account information directly to Intervenors that would enable them to later trace their funds.

[23]Plaintiff identifies its two 50% owners as WWKB LLC and Dreams to Reality LLC. Plaintiff's Complaint, Docket Entry No. 13, p. 1 ¶ 1. WWKB LLC has two 50% owners — Max Day and Michael Day. Id. at 1-2 ¶ 1.

[24]Trustee's Third Amended Complaint, Bankruptcy No. 06-3285 (Lead Bankruptcy No. 05-90080), Docket Entry No. 465, pp. 33 ¶ 126.

-7-

claim" against the business's assets, "largely contend[ing] that [it] sold them worthless equipment[.]"[25] The trustee appointed to represent the business's estate filed a third-party complaint against the Days, alleging that they had "denuded" the business of its assets despite its substantial debts.[26]

If this action is resolved by Defendant providing Plaintiff access to the frozen funds, Plaintiff may transfer or commingle them so that Intervenors can no longer trace their payments. This would frustrate Intervenors' ability to recover the funds, for example by making it difficult to obtain a constructive trust on the funds. See Remedies, O'Connor's Texas Causes of Action Ch. 12-A § 3 (2024 ed.) ("The court may place a constructive trust on proceeds, funds, or property obtained as a result of fraud . . . The plaintiff has the initial burden to trace improperly obtained funds to the property sought to be recovered."). If Intervenors were to prevail in a separate fraud action after Plaintiff disperses the funds, Intervenors would instead have to attempt to enforce a judgment against Plaintiff's general assets. The court is persuaded "that disposing of the action may as a practical matter impair or impede the [Intervenors'] ability to protect [their] interest" in the frozen funds. Fed. R. Civ. P. 24(a).

---

[25]In re Today's Destiny, Inc., Bankruptcy No. 05-90080, 2008 WL 5479109, at *1 (Bankr. S.D. Tex. Nov. 26, 2008).

[26]Trustee's Third Amended Complaint, Bankruptcy No. 06-3285 (Lead Bankruptcy No. 05-90080), Docket Entry No. 465, pp. 33-34 ¶¶ 127-31.

### 3. Representation of Intervenors' Interest

Intervenors argue that Defendant has "little incentive to correctly determine the true owner of the funds in the accounts at issue" and that "[i]ts primary interest is likely to relinquish control of the funds as soon as possible so that it can avoid being involved in litigation[.]"[27]

Defendant and the Intervenors do not have the same incentives. Defendant is motivated in part by the desire to avoid liability to Plaintiff, while the Intervenors are motivated by the desire to recover the frozen funds. For example, if Defendant decided that its risk of liability to Plaintiff and cost of litigating outweighed its compliance and other risks, it might decide to send the funds to Plaintiff in exchange for a favorable settlement. The court is therefore persuaded that the "existing parties [do not] adequately represent [Intervenors'] interest." Fed. R. Civ. P. 24(a).

Because Bustamante, Paul, Whitten, and Moore "claim[] an interest relating to the [funds] that [are] the subject of the action," because they are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest," and because the "existing parties [do not] adequately represent that interest," they are entitled to intervention of right. Fed. R. Civ. P. 24(a).

---

[27] Motion to Intervene, Docket Entry No. 12, p. 8.

C.  **Permissive Intervention**

In the alternative, Intervenors ask the court to allow permissive intervention. Intervenors argue that their fraud claim shares a common question with Plaintiff's claims — "whether [Plaintiff] could claim rightful possession of [the] assets."[28]

If the funds are found to be proceeds of fraud against the Intervenors, that would likely vindicate the Defendant's alleged freezing of the accounts. The claims therefore share a "common question of law or fact[,]" and the court may grant permissive intervention. Fed. R. Civ. P. 24(b)(1)(B). Permitting intervention is likely to conserve the parties' and court's resources by avoiding duplicative litigation of overlapping factual issues. Moreover, the court is not persuaded that "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Plaintiff presents only a vague objection that "the rights of [Plaintiff and Defendant] will be prejudiced by having a heavily protracted side-litigation ongoing over contractual matters and specious allegations of fraud vs. a relatively simple dispute involving a small amount of facts as to whether [Defendant] wrongfully withheld funds in [Plaintiff's] Accounts."[29] Plaintiff offers no support for its argument that litigation of Intervenors' claim will be "heavily

---

[28] Id.

[29] Plaintiff's Response, Docket Entry No. 14, p. 9 ¶ 23.

protracted" or that litigation of its own claims will be "relatively simple[.]"[30] The court concludes that the Intervenors should be allowed permissive intervention.

### IV. Conclusion and Order

Four of the Intervenors — Bustamante, Paul, Whitten, and Moore — have shown that they are entitled to intervention of right. Moreover, permissive intervention is appropriate as to all five Intervenors. The Amended Opposed Motion to Intervene by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil (Docket Entry No. 12) is therefore **GRANTED**. The Proposed Complaint in Intervention by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil (Docket Entry No. 12-2) is **ORDERED** to be **DOCKETED**.

**SIGNED** at Houston, Texas, on this 29th day of March, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[30] Id.