United States District Court
Southern District of Texas
**ENTERED**
June 13, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEALTH ASSISTANTS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-0040 |
| | § | |
| THREAD BANK, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Wealth Assistants LLC ("Wealth Assistants" or "Plaintiff"), brings this action against Defendant, Thread Bank ("Thread Bank" or "Defendant") for violation of the Texas Deceptive Trade Practices Act ("TDTPA"), money had and received, and unjust enrichment arising from Defendant's freezing of five bank accounts.[1]  Pending before the court is Defendant Thread Bank's Motion to Compel Arbitration ("Defendant's Motion to Compel Arbitration") (Docket Entry No. 26).  For the reasons stated below, Defendant's Motion to Compel Arbitration will be granted and this action as between Plaintiff and Defendant will be stayed pending arbitration because the court concludes that Plaintiff and Defendant formed an arbitration agreement that delegates issues of enforceability to an arbitrator.

---

[1] See Plaintiff Wealth Assistants LLC's Amended Petition ("Plaintiff's Amended Petition"), Docket Entry No. 13, pp. 4-6 ¶¶ 14-36.  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

1

## I. <u>Factual and Procedural Background</u>

### A.   **Factual Background**

Plaintiff alleges that "[b]eginning on October 11, 2023, Defendant Thread Bank froze five of [its] accounts without warning or explanation."[2]  Plaintiff argues that

> [d]espite several attempts to contact Thread Bank by Plaintiff and its counsel, Wealth Assistants has yet to receive its funds from Thread Bank or any information regarding its account[s]. Am. Pet. ¶¶ 8-11.  Rather, Thread Bank is continuing to withhold Wealth Assistant's funds, is refusing to give any kind of explanation for its withholding of funds and is refusing to surrender those funds to Wealth Assistants."[3]

### B.   **Procedural Background**

On January 5, 2024, Plaintiff initiated this action alleging claims for violation of the TDTPA, money had and received, and unjust enrichment.[4]

On February 9, 2024, the court entered an Order to Amend Plaintiff's Complaint to Allege Facts Establishing Subject Matter Jurisdiction (Docket Entry No. 11).  On February 21, 2024, Plaintiff filed its Amended Petition reasserting claims for violation of the TDTPA, money had and received, and unjust enrichment.

---

[2]<u>Id.</u> at 3 ¶ 7.

[3]Plaintiff's Response to Defendant's Motion to Compel Arbitration ("Plaintiff's Response in Opposition"), Docket Entry No. 29, p. 1 ¶ 2.

[4]Plaintiff Wealth Assistant LLC's Original Petition, Docket Entry No. 1, pp. 3-6 ¶¶ 14-36.

2

On February 2, 2024, the court received Opposed Motion to Intervene by John Paul Bustamante, Steven Paul, and Michael Whitten (Docket Entry No. 6), and on February 9, the court received an Amended Opposed Motion to Intervene by John Paul Bustamante, Steven Paul, Michael Whitten, John Moore, and Christopher Tawil ("Intervenors") (Docket Entry No. 12). Asserting that they have an important interest in the bank accounts at issue because their payments to Wealth Assistants are in those accounts, Intervenors argued that they should be allowed to intervene as a matter of right. Alternatively, Intervenors sought leave to intervene permissively. On March 29, 2024, the court entered a Memorandum Opinion and Order (Docket Entry No. 20), granting the Amended Motion to Intervene. On the same day, a Complaint in Intervention (Docket Entry No. 21) was filed asserting a single cause of action for fraud by all Intervenors against Wealth Assistants.

## II. **Analysis**

Citing the arbitration provision in the Deposit Agreement that governs Plaintiff's accounts,[5] Thread Bank argues that

> Plaintiff agreed . . . prior to filing this action to resolve this dispute and any others like it through arbitration, not litigation. . . It also agreed that any challenges to the enforceability of its arbitration agreement with Thread [Bank] would be resolved by an

---

[5]Deposit Agreement, Exhibit B to Declaration of Anatoli (Tony) Iakovlev in Support of Defendant Thread Bank's Motion to Compel Arbitration ("Iakovlev Declaration"), Docket Entry No. 26-4.

3

arbitrator. . . Plaintiff had the opportunity to opt out
of the arbitration provision and remain a Thread [Bank]
customer, but it did not do so. . .[6]

Thread Bank argues that "[t]his Court should enforce Plaintiff's contractual obligation to arbitrate its claims against Thread [Bank] and dismiss this case or, at a minimum, stay this case pending the outcome of the arbitration."[7]

Acknowledging that the Agreement governing its frozen accounts contains an arbitration clause, Plaintiff argues that "this case should not be compelled to arbitration because [its] claim of violation of the [TDTPA] does not fall under the Agreement and the arbitration clause itself is both substantively and procedurally unconscionable."[8]

## A.   Applicable Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, when a party establishes the existence of an agreement to arbitrate the dispute at issue, the court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration.   See Rent-A-Center, West, Inc. v.

---

[6]Defendant's Motion to Compel Arbitration, Docket Entry No. 26, p. 7.

[7]Id.  See also Defendant Thread Bank's Reply in Support of Motion to Compel Arbitration ("Defendant's Reply"), Docket Entry No. 31.

[8]Plaintiff's Response in Opposition, Docket Entry No. 29, p. 2 ¶ 3.

4

Jackson, 130 S. Ct. 2772, 2776 (2010).  While challenges to the
formation of an arbitration agreement are always for the court to
decide, Granite Rock Co. v. International Brotherhood of Teamsters,
130 S. Ct. 2847, 2858 (2010), challenges to an arbitration
agreement's coverage and enforceability may be delegated to an
arbitrator.  Rent-A-Center, 130 S. Ct. at 2776-78.  If an agreement
to arbitrate contains a valid delegation clause giving the
arbitrator power to rule on the arbitrability of specific claims,
the court is obligated "to refer a claim to arbitration to allow
the arbitrator to decide gateway arbitrability issues." Kubala v.
Supreme Production Services, Inc., 830 F.3d 199, 202 (5th
Cir. 2016) (citing Rent-A-Center, 130 S. Ct. at 2776-78).  Thus, a
valid delegation clause transfers questions of arbitrability from
the courts to the arbitrator.  Rent-a-Center, 130 S. Ct. at 2777
("The delegation provision is an agreement to arbitrate threshold
issues concerning the arbitration agreement.").

        In ruling on a motion to compel arbitration, the court may
consider evidence outside the pleadings.  See Gezu v. Charter
Communications, 17 F. 4th 547, 552-54 (5th Cir. 2021) (relying on
declarations as evidence that the parties had formed an agreement
to arbitrate).  The moving party bears the burden of "prov[ing] the
existence of an agreement to arbitrate by a preponderance of the
evidence." Grant v. Houser, 469 F. App'x 310, 315 (5th Cir. 2012)
(per curiam).  If the moving party carries its burden of proving

the existence of an agreement to arbitrate, the burden "shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope." Id. (citing Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 297 (5th Cir. 2004)). The court's "sole responsibility is to determine whether this dispute is governed by an arbitration clause, not to determine the merits of the dispute." Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).

In determining whether parties formed a agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995). However, questions concerning the interpretation and construction of valid arbitration agreements are governed by federal law. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983).

**B.    Application of the Law to the Facts**

> 1.   Undisputed Evidence Establishes that the Parties Formed an Arbitration Agreement.

The Deposit Agreement contains a choice-of-law provision stating that "[a]ll actions relating to your Account and this Agreement will be governed by the laws and regulations of the United States and the State of Tennessee where your Account will be

opened, irrespective of conflict of law principles."[9]   Although Plaintiff cites Texas law in support of its argument that the arbitration agreement included in the Deposit Agreement is unconscionable,[10] Plaintiff does not dispute that the Deposit Agreement is governed by Tennessee law.   Under Tennessee law a binding contract

> must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, [must be] free from fraud or undue influence, [must] not [be] against public policy and [must be] sufficiently definite to be enforced.

Sevier County Schools Federal Credit Unit v. Branch Banking and Trust Company, 990 F.3d 470, 476 (6th Cir. 2021) (quoting Staubach Retail Services-Southeast, LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005)).   Evidence presented by Thread Bank in the declarations of Anatoli Iakovlev and Paul Gallagher show that all of the elements of contract formation required by Tennessee law have been satisfied.

Iakovlev states that he is an employee of Relay Financial (US), Corp., a wholly owned subsidiary of Relay Financial Technologies, Inc. (together "Relay"), a financial technology company that partners with Thread Bank to offer business bank accounts through an online platform.[11]   Iakovlev states that

_____

[9]Deposit Agreement, Exhibit B to Iakovlev Declaration, Docket Entry No. 26-4., Docket Entry No. 26-4, p. 42 § 8.10.

[10]Plaintiff's Response in Opposition, Docket Entry No. 29, pp. 4-6 ¶¶ 13-16.

[11]Iakovlev Declaration, Docket Entry No. 26-2, p. 1 ¶ 1.

according to Relay's records, Plaintiff opened the five checking accounts with Thread Bank at issue on November 17, 2022.[12] Plaintiff opened these five accounts by upgrading to the Relay 2.0 platform, accounts that it had previously opened on the Relay 1.0 platform.[13]  Iakovlev states that

> [w]hen upgrading to Relay 2.0, Plaintiff was required to check a box acknowledging that "**I agree to Relay 2.0's Terms of Service**" and "I have read and reviewed Relay 2.0's Terms of Service, Privacy Policy, Deposit Agreement, and Cardholder Agreement." Ex. A.  The underlined phrases, including "Deposit Agreement," functioned as hyperlinks, which directed Plaintiff to a page containing the referenced documents, including Thread [Bank]'s Deposit Agreement.
>
> A true and correct copy of Thread [Bank]'s Deposit Account Agreement hyperlinked on the consent page . . . on November 17, 2022 when Plaintiff upgraded to Relay 2.0 is attached as **Exhibit B**.  The Deposit Agreement, which was also hyperlinked in the Terms of Service and available on Relay's website, stated, "By opening and continuing to hold an account with us [i.e., Thread Bank], you agree to be bound by this Agreement."
>
> Plaintiff could not upgrade to Relay 2.0 or open a . . . checking account with Thread [Bank] without first clicking or tapping the checkbox.  Ex. A.
>
> On November 17, 2022, after Plaintiff agreed to the Deposit Agreement, and as part of the upgrade to Relay 2.0, Plaintiff opened [the] five checking accounts . . . [that are the subject of this lawsuit].[14]

---

[12]Id. at 2 ¶ 6.

[13]Id. at 2-3 ¶¶ 7-11.

[14]Id. at 3-4 ¶¶ 12-15 (citing screen shot of clickbox, Exhibit A, Docket Entry No. 26-3, and Deposit Agreement, Exhibit B, Docket Entry No. 26-4).

Iakovlev also states that

> [i]n the Deposit Agreement to which Plaintiff agreed, the fourth paragraph contains a notice that directs Plaintiff — in bold and capitalized text — to the full arbitration clause in the Agreement:
>
> > **IMPORTANT NOTE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTIONS AND YOUR RIGHT TO A JURY.   THE TERMS OF THE ARBITRATION AND THE WAIVER APPEAR IN THE SECTION OF THIS AGREEMENT TITLED "ARBITRATION AND WAIVERS" BELOW.**
>
> Ex. B at 1. . . .[15]

Section 9 of the Deposit Agreement, titled **"Arbitration and Waivers,"** states in bold and capitalized letters, **"BE SURE THAT YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US."**[16]

Section 9.1, titled "Election to Arbitrate," states that

> You, Program Partner, and the Bank agree that the sole and exclusive forum and remedy for resolution of a claim be final and binding arbitration pursuant to this section (the "Arbitration Provision").   As used in this Arbitration Provision, "Claim" will include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us on the other hand, relating to or arising out of this Agreement, and/or the activities or relationships that involve, lead to, or result from this Agreement, including the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement.   Claims are subject to

---

[15]_Id._ at 5 ¶ 21 (quoting Deposit Agreement, Exhibit B to Iakovlev Declaration, Docket Entry No. 26-4, p. 1).

[16]Deposit Agreement, Exhibit B to Iakovlev Declaration, Docket Entry No. 26-4, p. 43 § 9.

arbitration regardless of whether they arise from
contract; tort (intentional or otherwise); a
constitution, statute, common law, or principles of
equity; or otherwise. Claims include matters arising as
initial claims, counterclaims, cross-claims, third-party
claims, or otherwise. Please note that you may continue
to assert Claims in small claims court, if your Claims
qualify and so long as the matter remains in such court
and advances only on an individual (non-class, non-
representative) basis. The scope of this Arbitration
Provision is to be given the broadest possible
interpretation that is enforceable.

You have a right to opt-out of this arbitration clause
and it will not affect any other terms and conditions of
this Agreement or your relationship with us. TO OPT OUT,
YOU MUST NOTIFY US IN WRITING OF YOUR INTENT TO DO SO
WITHIN SIXTY (60) DAYS AFTER OPENING YOUR ACCOUNT. . .
The arbitration clause will apply to any claims between
us relating to any account(s) for which we do not receive
an opt-out notice as described in this subsection.[17]

Gallagher states in his declaration that he is Thread Bank's

Chief Operating Officer,[18] that the Deposit Agreement attached as

Exhibit B to the Iakovlev Declaration is the Deposit Agreement that

Thread Bank entered with Plaintiff when Plaintiff opened the

accounts at issue,[19] and that despite having the opportunity to opt

out of the arbitration provision in the Deposit Agreement,

Plaintiff did not opt out of the abritration provision.[20]

---

[17]Id. § 9.1.

[18]Declaration of Paul Gallagher in Support of Defendant Thread
Bank's Motion to Compel Arbitration ("Gallagher Declaration"),
Docket Entry No. 26-1, p. 1 ¶ 3.

[19]Id. at 2 ¶ 5.

[20]Id. at 2-3 ¶ 8.

Plaintiff has not disputed any of the evidence presented in the Iakovlev and Gallagher declarations. The undisputed evidence thus shows that on November 17, 2022, Plaintiff opened the Thread Bank accounts at issue, that when it opened those accounts, Plaintiff assented to Thread Bank's Deposit Agreement, which contained an agreement to arbitrate, and that despite having the opportunity to opt out of the arbitration agreement, Plaintiff did not do so. Based on the evidence provided by the Iakovlev and Gallagher Declarations and their citations to the Deposit Agreement to which Plaintiff assented when opening the five accounts at issue, the court concludes that the parties formed an agreement to arbitrate. Courts applying Tennessee law have found analogous facts sufficient to support the conclusion that a valid arbitration agreement has been formed. See Anderson v. Amazon.com, Inc., 490 F.Supp.3d 1265, 1272-73 (M.D. Tenn. 2020) (applying Tennessee law to find clickwrap agreement to arbitrate valid); Scott v. RVshare LLC, No. 3:21-cv-00401, 2022 WL 866259, at *4 (M.D. Tenn. March 22, 2022)(granting motion to compel arbitration based on adequate notice of the terms of the agreement, whether considered a clickwrap or a browserwrap agreement).[21]

---

[21]Courts applying Texas law to analogous facts have reached the same conclusion. See In re Online Travel Co., 953 F. Supp. 2d 713, 718-9 (N.D. Tex. 2013) (applying Texas law to find clickwrap agreement to arbitrate valid).

2.   <u>The Arbitration Agreement Contains a Delegation Clause.</u>

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." <u>Arnold v. Homeaway, Inc.</u>, 890 F.3d 546, 551 (5th Cir. 2018) (citing <u>Rent-A-Center</u>, 130 S. Ct. at 2776-78).  But "courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." <u>Id.</u> at 551-52 (citing <u>First Options</u>, 115 S. Ct. at 1924-25).  Parties must provide clear and unmistakable evidence of their intent to delegate these issues by crafting a broad arbitration clause and/or by expressly incorporating rules empowering the arbitrator to decide substantive arbitrability.  <u>See Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.</u>, 921 F.3d 522, 537-38 (5th Cir. 2019).  Here, the parties's arbitration agreement does both, <u>i.e.</u>, the Deposit Agreement contains a broad arbitration provision that clearly and unmistakably delegates questions of arbitrability to an arbitrator, and it also incorporates specific arbitration rules that do the same.

In pertinent part the arbitration agreement states that it covers

> any past, present, or future claim, dispute, or controversy involving you . . . and us . . . relating to or arising out of this Agreement, and/or the activities or relationships that involve, lead to, or result from this Agreement, including the validity or enforceability

of this Arbitration Provision, any part thereof, or the entire Agreement.[22]

The Fifth Circuit has held that an agreement to submit "claims challenging the validity or enforceability of [an] agreement" to arbitrate is "unambiguous evidence of the parties' intention to submit arbitrability disputes to arbitration and that arbitration was properly compelled." Robinson v. J&K Administrative Management Services, Inc., 817 F.3d 193, 198 (5th Cir.), cert. denied, 137 S. Ct. 373 (2016).

Moreover, the Deposit Agreement expressly adopts JAMS rules requiring the arbitrator to resolve arbitrability disputes. Section 9.4 of the Deposit Agreement titled "Arbitration Procedures" states that

> [t]he party initiating arbitration will do so with the Judicial Alternatives and Mediation Services ("JAMS"). The arbitration will be conducted by a single arbitrator according to, and the location of the arbitration will be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law.  If you have any questions concerning JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800)352-5267 or visit their web site at: www.jamsadr.com. . . .[23]

Under the JAMS Rules, "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity,

---

²²Deposit Agreement, Exhibit B to Iakovlev Declaration, Docket Entry No. 26-4, p. 43 § 9.1

²³Id. at 44 § 9.4.

interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." See JAMS Comprehensive Arbitration Rules & Procedures R-11(b), https://www.jamsadr.com/rules (viewed June 12, 2024).  The Fifth Circuit has held that a provision expressly adopting JAMS rules constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability.  See Cooper v. WestEnd Capital Management, L.L.C., 832 F.3d 534, 546 (5th Cir. 2016) (finding that the arbitrator did not exceed its powers by determining issues of arbitrability because the parties' agreement expressly adopted the JAMS rules).  See also Work v. Intertek Resource Solutions, Inc., __ F. 4th ____, 2024 WL 2716871, at *2-*3 (5th Cir. May 28, 2024) (citing Cooper, 832 F.3d at 546, and holding that arbitration agreement stating that arbitration would be administered by JAMS pursuant to JAMS rules was sufficient to incorporate JAMS rules into the agreement by reference, including rule stating that the arbitrator would decide the question of arbitrability).  Because the parties' arbitration agreement contains an express agreement to submit to the arbitrator claims challenging the validity or enforce ability of an agreement to arbitrate, and also expressly adopts JAMS rules pursuant to which disputes over the formation, existence, validity, interpretation or scope of the agreement to arbitrate shall be submitted to and ruled on by the arbitrator, the court concludes that the parties clearly and unmistakably agreed to arbitrate arbitrability.

3.   <u>Whether the Arbitration Agreement is Enforceable is for the Arbitrator Not the Court to Decide.</u>

Plaintiff does not dispute that the parties' arbitration agreement contains a delegation clause that transfers power to decide arbitrability to the arbitrator.  Instead, Plaintiff argues that the arbitration agreement is unenforceable because Plaintiff's claim for violation of the TDTPA falls outside the scope of the agreement, and because the arbitration agreement is both procedurally and substantively unconscionable.[24]

Citing <u>Edwards v. Doordash, Inc.</u>, 888 F.3d 738, 744 (5th Cir. 2018), Defendant replies that

> [g]iven Plaintiff's apparent concession that an arbitration agreement exists between Plaintiff and Thread [Bank], Plaintiff's challenges to the arbitration agreement — that it does not apply to one of its claims and that it is unconscionable . . . — must be resolved by an arbitrator.  Where there is no dispute that an arbitration agreement was formed, the parties' agreement to delegate any remaining issues to an arbitrator must be enforced.[25]

In <u>Edwards</u> the Fifth Circuit held that "[i]f there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.  Challenges to the arbitration agreement as a whole are to be heard by the arbitrator."  <u>Id.</u>

---

[24]Plaintiff's Response in Opposition, Docket Entry No. 29, p. 2 ¶ 3.

[25]Defendant's Reply, Docket Entry No. 31, p. 6.

Whether a court or an arbitrator decides the validity of an arbitration agreement with a delegation provision is governed by the Supreme Court's decision in Rent–A–Center, 130 S. Ct. at 2772. In Rent–A–Center, the Supreme Court stated that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id. at 2776–77. The Supreme Court further held that a delegation provision is a separately enforceable provision because, under the FAA, "an arbitration provision is severable from the remainder of the contract." Id. at 2777–78 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1209 (2006)). In other words, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Id. at 2778. This severability rule applies even if the delegation provision is contained within the arbitration agreement. Id. at 2779. The Rent–A–Center decision does not mean, however, that a district court must automatically grant a motion to compel arbitration in any situation in which the agreement underlying the dispute contains a delegation provision, because the party seeking to avoid arbitration may still raise defenses to the delegation provision itself. The party opposing arbitration must "challenge[ ] the delegation provision specifically," and its failure to do so requires the court to

16

enforce the delegation provision as written.   <u>Rent-A-Center,</u> 130 S. Ct. at 2779.

Citing <u>Banc One Acceptance Corp. v. Hill,</u> 367 F.3d 426, 429 (5th Cir. 2004), for holding that "the enforceability of an arbitration agreement is governed by state contract law,"[26] and citing Texas Civil Practice and Remedies Code §§ 171.001 and 171.022 for recognizing unconscionability as a defense to an arbitration agreement,[27] Plaintiff argues that "[c]ourts have distinguished two types of unconscionability[: procedural and substantive], both of which apply to the Agreement in the instant case."[28]   Plaintiff argues that arbitration should not be compelled because (1) the TDTPA claim is not subject to arbitration; (2) the entire transaction is procedurally unconscionable; and (3) the arbitration clause is substantively unconscionable. These arguments do not attack the existence of a contract between the parties, the existence of an agreement to arbitrate between the parties, or the validity of the delegation clause.   Instead, they attack the enforceability of either the transaction, as a whole, or the arbitration clause, in particular.   Thus, they raise issues for the arbitrator, not the court, to decide. <u>See Edwards,</u> 888 F.3d at 744.

---

[26]Plaintiff's Response in Opposition, Docket Entry No. 29, p. 4 ¶ 13.

[27]<u>Id.</u>

[28]<u>Id.</u> at 5 ¶ 13.

        (a)   Whether Plaintiff's TDTPA Claim is Arbitrable Is a Question for the Arbitrator.

Citing <u>Wright v. Universal Maritime Service Corp.</u>, 119 S. Ct. 391, 396 (1998), Plaintiff asserts that "[t]he Supreme Court has distinguished between claims that are subject to arbitration and those that are not, basing this distinction on what the ultimate question for the arbitrator would be."[29]   Plaintiff argues that because its TDTPA claim does not arise from the Deposit Agreement but, instead, arises from Defendant's alleged violation of the TDTPA, this claim is not subject to the arbitration agreement.[30] Plaintiff explains that in <u>Wright,</u> which involved alleged violations of the Americans with Disabilities Act, the Court differentiated

> a claim of violating the law from claims arising from the [parties'] contract, ruling that, in such a case, "the ultimate question for the arbitrator would be not what the parties agreed to, but what federal law requires; and that is not a question which should be <u>presumed</u> to be included within the arbitration requirement."[31]

Asserting that the parties' arbitration agreement "delegates to the arbitrator any disputes about 'the validity or enforceability of this Arbitration Provision' . . . including — via adoption of the JAMS rules . . . — 'arbitrability disputes' and

---

[29]<u>Id.</u> at 3 ¶ 9.

[30]<u>Id.</u> at 3-4 ¶ 10.

[31]<u>Id.</u> at 4 ¶ 10.

'disputes over the . . . scope of the agreement,'"[32] Defendant argues that "[g]iven Plaintiff's apparent concession that an arbitration agreement exists between Plaintiff and Thread [Bank], Plaintiff's challenges to the arbitration agreement — that it does not apply to one of its claims and that it is unconscionable, . . . must be resolved by an arbitrator."[33] Citing Edwards, 888 F.3d at 744, Defendant argues that "[w]here there is no dispute that an arbitration agreement was formed, the parties' agreement to delegate any remaining issues to an arbitrator must be enforced."[34] The court agrees.

The Supreme Court has explained that "a court may not 'rule on the potential merits of [an] underlying' claim that is assigned by contract to an arbitrator[.]" Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 530 (2019) (quoting AT&T Technologies, Inc. v. Communications Workers of America, 106 S. Ct. 1415, 1419-20 (1986)). Because the Deposit Agreement covers "the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement,"[35] and expressly adopts JAMS rules,[36] Rule 11(b) of which provides that "[j]urisdictional and

---

[32]Defendant's Reply, Docket Entry No. 31, p. 6.

[33]Id.

[34]Id.

[35]Deposit Agreement, Exhibit B to Iakovlev Declaration, Docket Entry No. 26-4, p. 43 § 9.1

[36]Id. at 44 § 9.4.

arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator,"[37] whether the TDTPA prohibits arbitration of this dispute is a gateway question of arbitrability that the parties have agreed to delegate to the arbitrator.  <u>See</u> <u>Rent-A-Center,</u> 130 S. Ct. at 2776-78.


      (b)   Whether the Arbitration Provision is Unconscionable
           Is a Question for the Arbitrator.

Citing <u>In re Halliburton,</u> 80 S.W.3d 566, 571 (Tex. 2002), <u>cert. denied sub nom. Myers v. Halliburton,</u> 123 S. Ct. 901 (2003), for stating that procedural unconscionability refers to circumstances surrounding the adoption of the arbitration provision, Plaintiff argues that

> [p]rocedural unconscionability applies to the Agreement in the instant case, as Defendant knowingly made misrepresentations that induced Plaintiff to utilize Thread Bank. Namely, Defendant represented that it would handle Plaintiff's money and affairs prudently, that its services were properly managed and conducted, that its services would be of a particular standard, quality, or grade when they were not, and that it would have adequate safety and security of the funds on deposit. Defendant made these representations with no intention of upholding them, as they blatantly reneged on their promises and froze multiple of Plaintiff's accounts without warning or authorization to do so.[38]

---

[37]<u>See</u> JAMS Comprehensive Arbitration Rules & Procedures R-11(b), <u>https://www.jamsadr.com/rules</u> (viewed June 12, 2024).

[38]Plaintiff's Response in Opposition, Docket Entry No. 29, p. 6 ¶ 17.

Plaintiff also argues that the Agreement was procedurally unconscionable because

> [b]efore switching to Thread Bank, Plaintiff maintained five business checking accounts with Evolve Bank & Trust, the bank with which Relay previously partnered. . . At that time, Relay was operating a platform referred to as "Relay 1.0" before upgrading to "Relay 2.0," the platform that Relay now employs. . . Upon Relay's upgrade and new partnership with Thread Bank, Plaintiff agreed to upgrade to Rely 2.0 and open its accounts with Thread Bank . . .
>
> Plaintiff's previous relationship with Relay is critical to the instant case and unconscionability of the Agreement, as Plaintiff's signing of the Agreement was within the context of renewing and upgrading its current banking platform. If upgrading or renewing one's use of a platform, it is fair to assume that a rational person may not review the details of every document after already doing so when they initially signed up for the platform. The same can be assumed in the instant case as Plaintiff, wanting to continue banking with Relay, agreed to the mandatory upgrade and switch to Thread Bank by executing the Agreement.[39]

Citing <u>In re Olshan Foundation Repair Co.</u>, 328 S.W.3d 883, 894 (Tex. 2010), and asserting that "[u]nder Texas law, an arbitration clause may render a contract unconscionable . . . if the costs of arbitration could preclude a party from effectively vindicating their federal statutory rights in arbitration,"[40] Plaintiff argues that the arbitration agreement is substantively unconscionable because

> considering the substantial upfront costs incurred during arbitration, it is clear that arbitrating the instant case would be far more costly to both parties. Some of these costs include the $2,000 fee required by JAMS,

---

[39]<u>Id.</u> at 6-7 ¶¶ 18-19.

[40]<u>Id.</u> at 5 ¶ 14.

compensation for the arbitrator (averaging around $3,000 per day), the arbitrator's study and travel time, and a final fee, unquestionably burdening the parties with far higher costs than those of litigation.[41]

Like Plaintiff's TDTPA argument, Plaintiff's procedural and substantive unconscionability arguments must be decided by the arbitrator and not the court. Plaintiff's unconscionability arguments attack either the Deposit Agreement or its arbitration provision as a whole, and do not attached the delegation clause in particular. Under Tennessee law, unconscionability challenges of this type are a matter of enforceability, not contract formation. See Wallace v. National Bank of Commerce, 938 S.W.2d 684, 688 (Tenn. 1996) (identifying unconscionability as a defense to enforcement of a contract). The same is true under Texas law. See Tex. Bus. & Comm. Code § 2.302(a) (permitting a to court refuse to enforce a contract based on unconscionability); Maravilla v. Gruma Corp., 783 F. App'x 392, 396 (5th Cir. 2019) (per curiam) (identifying unconscionability as a defense to enforcement of a contract under Texas law). Because the court has concluded that the parties formed an agreement to arbitrate, and that agreement contains a delegation clause that transfers questions of arbitrability to the arbitrator, the court may not consider challenges to the validity or enforceability of either the transaction as a whole, or the agreement to arbitrate. Edwards, 888 F.3d at 744. Thus, the issue of unconscionability is one for

---

[41]Id. at 5-6 ¶ 15.

22

the arbitrator to decide.  See Rent-A-Center, 130 S. Ct. at 2779.

See also Edwards, 888 F.3d at 744 (when an arbitration agreement

includes a delegation clause, "absent a challenge to the delegation

clause itself, [the court] will consider that clause to be valid

and compel arbitration").   Therefore, the court must treat the

delegation clause as valid, and grant Defendant's Motion to Compel

Arbitration.


**C.   This Action as between Plaintiff and Defendant Will Be Stayed Pending Arbitration.**

Asserting that all of Plaintiff's claims are subject to

arbitration, Defendant argues that this action should be dismissed,

or alternatively, stayed during arbitration.[42]  Plaintiff opposes

dismissal arguing that "in the Fifth Circuit, a court may only

dismiss a case when all of the claims are subject to arbitration."[43]

The FAA instructs courts to stay an action on application of one of

the parties if the court determines that the parties have agreed to

arbitrate a claim brought before it and the issue is in fact

arbitrable.  See 9 U.S.C. § 3.   In Smith v. Spizzirri, 144 S. Ct.

1173, 1178 (2024), the Supreme Court held that "[w]hen a district

court finds that a lawsuit involves an arbitrable dispute, and a

party requests a stay pending arbitration, § 3 of the FAA compels

---

[42]Defendant's Motion to Compel Arbitration, Docket Entry No. 26, p. 20.  See also Defendant's Reply, Docket Entry No. 31, p. 14.

[43]Plaintiff's Response in Opposition, Docket Entry No. 29, p. 4 ¶¶ 11-12.

the court to stay the proceeding." Defendant argues that "<u>Smith</u>
does not preclude dismissal here because Plaintiff has not
requested a stay."[44] Although Plaintiff has not expressly requested
a stay pending arbitration, Plaintiff has expressly opposed
dismissal. Moreover, assuming without deciding that dismissal
remains an appropriate option after <u>Smith,</u> the court is not
persuaded that dismissal is appropriate in this case because the
order compelling arbitration will not apply to the intervenors'
claims which remain pending against Plaintiff. Thus, this action
as between Plaintiff and Defendant will not be dismissed but,
instead, this action as between Plaintiff and Defendant will be
stayed pending arbitration.


### III. <u>Conclusions and Order</u>

For the reasons stated above in § II.B, Wealth Assistants LLC
is **ORDERED** to arbitrate with Thread Bank the claims asserted in
this action.

For the reasons stated above in § II.C, the claims that Wealth
Assistants LLC has asserted against Thread Bank are **STAYED** pending
notification from the parties that the arbitration process has been
completed. Wealth Assistants LLC and Thread Bank are required to
submit a status report on August 30, 2024, and every sixty (60)
days thereafter.

---

[44]Defendant's Reply, Docket Entry No. 31, p. 14.

Defendant Thread Bank's Motion to Compel Arbitration, Docket Entry No. 26, is **GRANTED**.

The claims that the Intervenors have asserted against Wealth Assistants LLC are not stayed.

**SIGNED** at Houston, Texas, this 13th day of June, 2024.

_____
                    SIM LAKE
       SENIOR UNITED STATES DISTRICT JUDGE